# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1615-23

Y.D.,[1]

    Plaintiff-Respondent,

v.

M.H.,

    Defendant-Appellant.

_____

Submitted January 23, 2025 – Decided May 5, 2025

Before Judges Paganelli and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FV-09-1100-19.

Chiesa Shahinian & Giantomasi, PC, attorneys for appellant (Alyssa A. Bartholomew, on the brief).

Respondent has not filed a brief.

---

[1] We refer to the parties by initials and use fictitious names for the children to protect confidentiality. See R. 1:38-3(d)(9).

PER CURIAM

Defendant M.H. appeals from the December 13, 2023 family court order denying his motion to modify custody and parenting time, alleging the court erred as it: (1) failed to find changed circumstances warranting modification of the custody order; (2) continued to restrict M.H.'s parenting time to video calls; (3) made evidentiary and procedural errors; and (4) violated M.H.'s right to due process by failing to provide his counsel with proper notice of the oral decision. Reviewing these claims in light of the record and applicable law, we affirm.

I.

Background[2]

M.H. and plaintiff Y.D. had a prior dating relationship, and share three children, born in 2008, 2014, and 2016. The parties' ongoing dispute over custody and visitation of the children commenced in 2018, when Y.D. filed a domestic violence complaint and sought a final restraining order (FRO) against M.H., which she obtained in 2019. Y.D. made no claims of abuse involving the children; thus, the FRO continued the parties' prior informal parenting time

---

[2] M.H. presents a limited record on appeal, offering minimal documentation or transcripts of past events, pleadings, or court proceedings. As such, we glean the relevant facts and history from the motion testimony, the court's decision, and the few orders provided in M.H.'s appendix.

A-1615-23

arrangement through which M.H. had the children each afternoon until Y.D. picked them up after work, changing only to curbside pickup after the FRO was issued.[3] An amended FRO in June 2019 expanded parenting time to allow M.H. overnight parenting time every other weekend. The parties were afforded flexibility to agree to additional parenting time.

The FRO was again amended in September 2019,[4] after allegations arose that Y.D. had physically abused the oldest child, Sally; and in July 2020, M.H. was granted temporary physical custody with both parties sharing joint legal custody. Y.D.'s parenting time with Sally was limited to supervised visits only, leaving Sally discretion over whether to continue overnight visits with Y.D. The Division of Child Protection and Permanency (the Division) investigated and did not substantiate the abuse allegations, and in October 2020, after a hearing, the court restored custody and parenting time to Y.D. A subsequent order allowed the parties to agree to the terms of visitation.

---

[3] On appeal, we affirmed the entry of the FRO. See Y.D. v. M.H., No. A-3896-18 (App. Div. Jan. 29, 2021) (slip op. at 2).

[4] We note that after the amended FRO was entered in September 2019, all further proceedings were handled by the same motion judge who denied the motion now on appeal, and who later passed away. Thus, M.H. has withdrawn his request for remand to a different judge.

3

In early 2021, after Sally told Y.D. she no longer wished to visit with her father, Y.D. withheld M.H.'s access to the children, and M.H. filed a motion for custody and parenting time. Around that time, Sally disclosed that M.H.'s son—Sally's half-brother—sexually assaulted her. The Division opened an investigation, and in June 2022, the parties, by consent, agreed to virtual video visits between M.H. and the children four evenings weekly, noting Y.D.'s objection to M.H.'s exercising supervised in-person visitation with the children. The Division later closed its investigation without substantiating the allegations.

After a hearing in April 2023, the family court rejected M.H.'s subsequent application to restore in-person visitation, finding M.H. failed to show changed circumstances. In August 2023, M.H. filed an Order to Show Cause (OTSC) alleging Sally called him crying and claiming that Y.D. and other maternal relatives had physically abused her, but told M.H. she feared retaliation if she reported the abuse to the Division. The family court held an emergent hearing during which it clarified that the Division visited the children to investigate M.H.'s claim and found the children were safe with Y.D. The court scheduled a hearing on M.H.'s application for changed custody and parenting time.

<u>The November 6, 2023 Hearing</u>

Both M.H. and Y.D. testified at the November 6 hearing, each recounting past and recent events related to the children and the parties' custody dispute. M.H. testified that the children contacted him expressing both fear of Y.D. and a desire to see him.

M.H. explained that he had always exercised parenting time with the children without concern until what he considered to be the false accusation that his son had sexually assaulted Sally. He testified that the Division found that allegation "unfounded" and no criminal charges ever resulted, yet his parenting time remained restricted to unsupervised video visits.

M.H. alleged that on April 30, 2023, Sally called him crying at 12:00 a.m. stating that Y.D. "abused her," "was beating her," "[h]itting her," and "slapping her in the face," causing facial swelling. M.H. claimed Sally tried to intervene when Y.D. was beating the other children, and Sally ultimately fled and spent the night with a friend in Newark.

M.H. described the August call he received from his middle child, then-nine-years-old, who was crying and handed the telephone to Sally who was upset and asked if the children could come stay with him as their maternal grandmother had just beaten them. M.H.'s counsel played a recording,

authenticated by M.H., purporting to be that phone conversation. The court indicated it could not hear the voice alleged to be Sally's, but the motion transcript reflects the following exchange designating the speakers as M.H. and Sally:

[M.H.]: What happened?

[Sally]: I don't want to die, dad.

[M.H.]: [Sally], you're not going to die.

[Sally]: I want to.

[M.H.]: Don't say you want to die, baby, please.

[Sally]: I don't want to live here anymore. I just want to die. I don't want . . . to be here anymore. I just want to die.

[M.H.]: [Sally,] . . . can you listen to me, babe?

[Sally]: When the [Division] worker talk[s] to you, can you please tell them the truth [about] what's going on and stop hiding stuff?

[Sally]: I don't—

[M.H.]: Why don't you want to tell them the truth?

[Sally]: She'll beat me up.

[M.H.]: Who's going to beat you?

[Sally]: (Inaudible).

A-1615-23

[M.H.]: So, [Sally], if you tell the [Division] the truth[,] . . . they will beat you more?

[Sally]: No . . .

[M.H.]: No, no, no, no, no. You just t[old] me you don't want to get more beaten, so you mean to tell me if you tell the [Division] the truth[,] they're going to beat you more? That's what's happening, right?

[Sally]: Yeah.

M.H. testified that in the recording, Sally was referring to Y.D., her aunt, and her grandmother as "they," and he claimed all three "beat" her and would continue beating her if she reported it to the Division.

M.H. expressed his desire to see his children, his concern about their safety in Y.D.'s care, and indicated Y.D. does not inform him about the children via text as required and has blocked his phone number. He explained that he speaks to Sally through video calls. The other children call him on the days and times specified in the June 2022 consent order. M.H. testified that Sally showed up at his house "multiple times" and he provided a screenshot of the Ring doorbell camera showing Sally at his home.

Y.D. testified that she does not believe her children are safe with M.H., and admitted that when the children occasionally ask to see their father, she tells them, "you know that you can't, but you can call him on Face[T]ime," which

"[t]hey know they can [do]." When asked if she blocked M.H.'s number, Y.D. responded that she "might have," but she thought she had unblocked him. She recalled Sally wrote in her diary that M.H. laid with Sally on her bed, and "[Sally] was very uncomfortable about that because she felt something between her legs." Y.D. believed video calls were safer for the children and feared in-person visitation, especially because M.H.'s son resides with him.

Y.D. denied hitting or abusing any of the children. Regarding the 2019 allegation of abuse against her, she explained M.H. had counseled Sally to "come into the court and lie." Y.D. also recalled Sally sneaking out of the house to go to Newark, but denied it was a result of Y.D. assaulting her. She indicated she was unaware Sally went to M.H.'s home but recalled her saying that M.H. "offered her [$]100 . . . and that she could come get it whenever she wants." Y.D. told her not to "go around there," although she acknowledged knowing Sally sees her half-brother over Y.D.'s objection.

The Court's Motion Decision

On December 13, 2023, the court denied M.H.'s motion to modify custody and visitation, finding M.H. failed to establish changed circumstances.

Specifically, the court reviewed the history of custody and parenting time orders and prior proceedings, calling M.H.'s testimony regarding the prior

history of this case "inaccurate" and incomplete concerning the circumstances surrounding those orders, and crediting Y.D.'s testimony over M.H.'s.

Regarding the April 2023 incident when Sally allegedly called M.H. crying, claiming Y.D. abused her and her siblings, the court determined Y.D. "testified, more credibly, that she had not hit the children," and found "that what [M.H.] testified to had not occurred." The court similarly found Y.D.'s testimony more credible regarding the incident when Sally left her house and slept overnight at a friend's house in Newark.

Regarding the August telephone call and recording in which Sally indicated she was afraid to tell the Division "the truth" and stated she feared Y.D. would "beat [her] up," the court believed Y.D.'s denial of abuse allegations and found her testimony more credible than M.H.'s. Accordingly, the court concluded M.H. failed to prove a change in circumstances warranting modification of custody or visitation and that the existing custody order would remain in effect.

Therefore, the parties continue to share joint legal custody of the children, and M.H. exercises his parenting time on video visitation on Sundays, Mondays, Wednesdays, and Thursdays at 7:00 p.m., with calls to be initiated by Sally.

M.H. and defense counsel did not appear at the beginning of the virtual proceeding in which the court was issuing its oral decision. Believing M.H. and his counsel had been properly advised of the proceeding, but failed to appear, the court put its decision on the record in their absence. At the conclusion of the decision, M.H. appeared in the virtual proceeding, but did not advise the court that it utilized the incorrect email address to notify M.H.'s counsel of the proceeding.

## II.

In considering M.H.'s claims, we recognize our review of "a trial court's findings in a custody dispute is limited." W.M. v. D.G., 467 N.J. Super. 216, 229 (App. Div. 2021). "We accord deference to Family Part judges due to their 'special jurisdiction and expertise in family [law] matters.'" Gormley v. Gormley, 462 N.J. Super. 433, 442 (App. Div. 2019) (alteration in original) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)).

"Deference is especially appropriate when the evidence is largely testimonial and involves questions of credibility because, having . . . seen and observed the witnesses, the trial court has a better perspective than a reviewing court in evaluating the[ir] veracity." P.B. v. T.H., 370 N.J. Super. 586, 601 (App. Div. 2004). A family judge's "findings are binding on appeal so long as

their determinations are 'supported by adequate, substantial, credible evidence.'" Gormley, 462 N.J. Super. at 442 (quoting Cesare, 154 N.J. at 411-12). Only when the trial court's conclusions are "so 'clearly mistaken' or 'wide of the mark' should an appellate court intervene and make its own findings to ensure that there is not a denial of justice." N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008) (quoting N.J. Div. of Youth & Fam. Servs. v. G.L., 191 N.J. 596, 605 (2007)). Appellate courts review issues of law de novo, including issues arising in a custody dispute. See R.K. v. F.K., 437 N.J. Super. 58, 61 (App. Div. 2014).

A.

We first address M.H.'s claim that the court abused its discretion in finding he did not demonstrate changed circumstances warranting modification of custody and parenting time. He asserts that change is necessary to protect the best interests of the children, as Y.D. has abused the children and alienated them from him. He claims the court improperly disregarded the recording reflecting Sally's crying telephone call to him in August, corroborating his claims that Y.D. abuses the children, placing them at risk of harm.

A moving party seeking to alter a custody arrangement must show there has been a change in circumstances and that it is in the child's best interests to

11

modify such arrangement. See Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007). An existing custody order is presumed to "'embod[y] a best interests determination' and should be modified only where there is a 'showing [of] changed circumstances which would affect the welfare of the children.'" A.J. v. R.J., 461 N.J. Super. 173, 182 (App. Div. 2019) (alteration in original) (quoting Todd v. Sheridan, 268 N.J. Super. 387, 398 (App. Div. 1993)).

When a change in circumstances is demonstrated, the moving party is "entitled to a plenary hearing as to disputed material facts regarding the child's best interests, and whether those best interests are served by modification of the existing custody order." R.K., 437 N.J. Super. at 66 (quoting Faucett v. Vasquez, 411 N.J. Super. 108, 111 (App. Div. 2009)).

Affording the necessary deference to the family court's determination, we discern no misapplication of discretion in the motion court's finding that M.H. failed to establish a change in circumstances. The court, familiar with the parties and their contentious history of custody and parenting time disputes, heard testimony from both parties and found Y.D. was credible, but M.H. was not, noting M.H. distorted the circumstances surrounding the prior orders.

The court recounted the parties' history and recognized that the existing custody and parenting time arrangement was established by consent in 2022

during the Division's investigation of sexual assault allegations by Sally against M.H.'s son, which the Division ultimately found was not substantiated. Aware that the investigation was closed, the court nonetheless denied M.H.'s application to modify that consent arrangement after a hearing in April 2023.

The court had also previously denied M.H.'s August 2023 OTSC seeking immediate change of custody based on the same allegations that Sally called M.H. crying and claimed abuse by Y.D. after the court confirmed that the Division verified the children were safe with their mother. Counsel for M.H. represented that the recording of the call had been provided to the Division. The court then set a hearing date and afforded M.H. the opportunity to present his claim of changed circumstances based on these events.

After M.H. presented his case, the court was not persuaded that M.H. established the circumstances had changed since the entry of the 2022 consent order. It rejected M.H.'s claims that the children were unsafe with or abused by Y.D. As that decision was grounded in the record, we will not disturb that finding.

M.H. asserts the court abused its discretion in failing to consider the recording of the August telephone call from Sally. We "will reverse a judgment based on an evidentiary error only if . . . the error 'was clearly capable of

13

producing an unjust result.'" Manata v. Pereira, 436 N.J. Super. 330, 343-44 (App. Div. 2014) (quoting Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 502 (1999)) (internal quotation marks omitted). An alleged error "will not be grounds for reversal if it was 'harmless error.'" State v. J.R., 227 N.J. 393, 417 (2017) (quoting State v. Macon, 57 N.J. 325, 337-38 (1971)). "An error cannot be harmless if there is 'some degree of possibility that [the error] led to an unjust result.'" Willner v. Vertical Reality, Inc., 235 N.J. 65, 79 (2018) (alteration in original) (quoting State v. Lazo, 209 N.J. 9, 26 (2012)).

The court indicated it could not clearly hear the recording when it was played during the hearing. M.H. has not provided the recording for our review. Therefore, we are relegated to the limited audible portion transcribed in the hearing transcript, which does not reflect Sally naming Y.D. or making a request to live with M.H.

While the text of the call reflects concerning statements on the part of what is presumed to be Sally, we cannot assume that the court did not consider the recording, as it inquired whether CourtSmart picked up the audio and referenced the recording in its decision. The court cited to that telephone call and indicated it credited Y.D.'s denial of any claim that she was abusing the

14                                                                              A-1615-23

children.  Therefore, we defer to the findings of the motion court as it was better equipped to place these allegations in the factual and historical context.

## B.

M.H. claims for the first time on appeal that ongoing virtual parenting time is contrary to public policy and detrimental to the children.  Having not raised this challenge before the motion court, we decline to address it for the first time here.  "[I]ssues not raised below will ordinarily not be considered on appeal unless they are jurisdictional in nature or substantially implicate the public interest."  N.J. Div. of Youth & Fam. Servs. v. M.C. III, 201 N.J. 328, 339 (2010) (citing Cnty. of Essex v. First Union Nat'l Bank, 186 N.J. 46, 51 (2006)); see also Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (absent plain error leading to the possibility of an unjust result, we generally decline to consider arguments not raised at trial).

M.H. did squarely argue to the motion court that the 2022 consent order establishing virtual visitation is no longer required in this particular situation and was intended to be temporary while the sexual assault allegations against his son were under investigation.  We are satisfied the court considered and resolved that claim.

A-1615-23

Y.D. testified that the only reason the Division could not substantiate Sally's allegations of sexual assault was because Sally refused to cooperate. Y.D. also raised concern about the children's safety in M.H.'s home with M.H.'s son present. It appears that the court also previously interviewed Sally, considered the Division reports, heard from the parties, and continued to deem virtual visitation appropriate. We discern no basis to disturb this determination on the record presented.

## C.

M.H. further asserts, without citation to legal authority, that the trial court violated his right to due process as his counsel never received notice of the court's December 13, 2023 oral decision. He contends the court sent the Zoom link to his counsel's incorrect email address and improperly proceeded to place its decision on the record without sufficient notice. He claims with proper notice counsel could have appeared and raised issues with the decision on the record.

Due process dictates that a State may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "At its core, due process requires adequate notice and an opportunity to be heard, whether analyzed under the Federal Constitution or under the New Jersey Constitution." Harrison Redevelopment Agency v. DeRose, 398 N.J. Super.

16

361, 403 (App. Div. 2008). Additionally, "a party in a judicial hearing [must] receive 'notice defining the issues and an adequate opportunity to prepare and respond.'" H.E.S. v. J.C.S., 175 N.J. 309, 321 (2003) (quoting McKeown-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 559 (1993)).

Rule 1:6-2(f) provides that "if [a] motion was argued and the court intends to place its findings on the record at a later date, it shall give all parties one day's notice . . . of the time and place it shall do so." In these circumstances, however, we do not perceive any due process deprivation or error clearly capable of leading to an unjust result. See R. 2:10-2.

Testimony was taken and arguments were made at the conclusion of the hearing on November 6, 2023. There was no indication that the court would be entertaining further argument or reopening the record when it rendered its oral decision. There is no suggestion that the notice to an erroneous email address was the result of anything but unfortunate inadvertence. There is similarly no indication that M.H. was unable to access the court record memorializing the decision if he wished to take further action or to be heard.

M.H. did not seek reconsideration or raise this issue before the trial court beyond counsel's apparently sending a letter to the court indicating the failure to appear was the result of the court's emailing error and apparently seeking a

conference with the court. We have not been provided any information regarding what, if anything, resulted from that correspondence. Accordingly, we are satisfied that any unintentional failure by the court to give proper notice of the reading of the decision on the record did not rise to the level of a constitutional deprivation or warrant relief.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Hanley

Clerk of the Appellate Division

18